[Cite as *State ex rel. Booth v. Indus. Comm.*, 2013-Ohio-5392.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Joshua C. Booth, | : | |
| | : | |
| Relator, | | |
| | : | No. 13AP-204 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission<br>of Ohio and Digital Dish, Inc., | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 10, 2013

*Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

*William W. Johnston,* for respondent Digital Dish, Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶1} Relator, Joshua C. Booth, has filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him temporary total disability ("TTD") payments.

{¶2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of

law. The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.

{¶3} Counsel for Booth has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. Counsel for Digital Dish, Inc., Booth's former employer, has also filed a memorandum in response to the objection. The case is now before the court for a full, independent review.

{¶4} Booth was working as a technician for Digital Dish, Inc. when he was hurt. His allowed conditions are lumbosacral sprain and substantial aggravation of preexisting degenerative disk disease at L5-S1. Booth could no longer do the work of a technician, but Digital Dish, Inc. accommodated his restrictions by finding him a job in its warehouse.

{¶5} Approximately six months after Booth was injured, he was fired. Booth then applied for TTD compensation.

{¶6} Digital Dish, Inc. alleged that Booth had violated a written work rule which barred outside employment and solicitations. Specifically, Booth had sent text messages in which Booth was apparently offering to sell cable to a former Digital Dish, Inc. employee. Whether the cable was Digital Dish, Inc. cable or cable from another source, was not clear from the texts. At worst, Booth was offering to steal cable from the warehouse and sell it. At best, Booth was competing with his employer by selling a product Digital Dish, Inc. sold.

{¶7} A district hearing officer refused Booth's application for TTD compensation, finding that Booth had voluntarily abandoned his employment. A staff hearing officer agreed.

{¶8} Booth had argued that the text offering to sell cable was not serious, but a joke. The hearing officers did not buy the argument. A further appeal did change the result.

{¶9} The essence of voluntary abandonment of employment is that an employee does something which the employee knows or should know would cause the employee to be fired. Booth knew or should have known his attempt to sell company cable or a product like company cable in competition with Digital Dish, Inc. would get him fired. His conduct fits squarely within the legitimate scope of the doctrine of voluntary abandonment of employment.

{¶10}  The specific objections filed by Booth's counsel are:

<u>Objection 1</u>

The Magistrate erred by finding that Mr. Booth has "backed away" from his argument that he did not violate the rule in question.

<u>Objection 2</u>

The Magistrate erred by affirming a finding of voluntary abandonment when the work rule that was violated was not identified by the employer as a dischargeable offense.

{¶11}  As to the first objection, it does not matter whether or not Booth backed away from arguing the work rule applicable.  The work rule clearly applied and was considered at all levels.

{¶12}  The first objection is overruled.

{¶13}  The second objection tries to assert that Booth was not on notice that his trying to sell company property or trying to compete with his employer in selling cable would get him fired.  Booth clearly should have known that he would be fired if his texts came to light.

{¶14}  The second objection is overruled.

{¶15}  Both objections having been overruled, the findings of fact and conclusions of law in the magistrate's decision are adopted.  As a result, we deny the request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

DORRIAN and McCORMAC, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).

—————————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel.                        :
Joshua C. Booth,

                                             :

        **Relator,**

                                             :            No. 13AP-204

v.

                                             :            (REGULAR CALENDAR)

Industrial Commission
of Ohio and Digital Dish, Inc.,              :

        **Respondents.**              :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on August 20, 2013

---

*Jon Goodman Law, LLC,* and *Jon H. Goodman,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

*William W. Johnston,* for respondent Digital Dish, Inc.

---

### IN MANDAMUS

{¶16} Relator, Joshua C. Booth, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion for temporary total disability ("TTD") compensation and ordering the commission to find that relator is entitled to that compensation.

<u>Findings of Fact</u>:

{¶17}   Relator was working as a technician for Digital Dish, Inc. ("Digital Dish") on December 27, 2011 when he sustained a work-related injury.   Relator's workers' compensation claim has been allowed for the following conditions:

{¶18}   Lumbosacral sprain; substantial aggravation of pre-existing degenerative disc disease at L5-S1.

{¶19}   Relator began treating with Carl Otten, M.D., who opined that, although relator could not return to his former position of employment, he could return to work with certain restrictions.

{¶20}   Digital Dish was able to accommodate those restrictions by providing relator a job in the warehouse.

{¶21}   Relator was still working under restrictions in May 2012 when Digital Dish terminated him for allegedly violating its work rule prohibiting outside employment and solicitation.

{¶22}   Following his termination, relator sought TTD compensation because medically he was unable to return to his former position of employment.

{¶23}   Digital Dish did not dispute the fact that medically relator was unable to return to his former position of employment.   However, Digital Dish argued that relator was not entitled to the award of TTD compensation because he had voluntarily abandoned the workplace.   Digital Dish presented the following evidence in support of its argument.

{¶24}   Portions of Digital Dish's policy manual which provide as follows:

> **At-Will Employment**
> I further understand that my employment is at will, and neither I nor Digital Dish, Inc. has entered into a contract regarding the duration of my employment. I am free to terminate my employment with Digital Dish, Inc. at any time, with or without reason. Likewise, Digital Dish, Inc. has the right to terminate my employment, or otherwise discipline, transfer, or demote me at any time, with or without reason, for any lawful reason at the discretion of Digital Dish, Inc. No employee of Digital Dish, Inc. can enter into an employment contract for a specified period of time, or make any agreement contrary to this policy without the written approval from the owner.

* * *

**Outside Employment**
Employees may not take an outside job, either for pay or as a donation of her/his personal time, with a customer or competitor of Digital Dish, Inc.; nor may they do work on their own if it competes in any way with the products or services we provide our customers. If your financial situation requires you to hold a second job, part-time or full-time, or if you intend to engage in a business enterprise of your own, Digital Dish, Inc. would like to know about it. Before accepting any outside employment you are required to discuss the matter with your supervisor.

cc. Soliciting during working hours and/or in working areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on company premises.

(b) Copies of text messages sent from relator to Garth Bertschi, II, a former employee of Digital Dish who had been terminated and was currently working for DirectTv which text messages were sent on May 19, 2012 beginning at 12:35 and ending at 1:32:

Booth: U buy your own cable?

Bertschi: Yeah[.]

Booth: How much?

Bertschi: 50-60 a box[.]

Booth: How bout u buy off me for 20. Hell [I']ll give u deal on everything lol[.]

Bertschi: Nah I'm all good dd [Digital Dish] already threatened to sue me once that was enough[.]

Booth: O[h] I see don't trust me[.]

Booth: No risk to u make order threw [sic] me ill bring it to your house;) save u money I make money lol[.]

Booth: ...

Bertschi: Sorry was working[.]

(c) A copy of a light-duty time card representing the hours relator worked the week of May 15, 2012 indicating that, on May 19, 2012, relator worked the following hours:

| Saturday | In | 4:30 |
|----------|-----|-------|
| Date | Out | 12:00 |
| 5/19/12 | In | 12:30 |
| | Out | 1:00 |

(d) That time sheet had been completed by Christal McCarley, the warehouse manager, who explained the reasons why she completed relator's timesheet:

> On, Tuesday, May 22, 2012, I, Christal McCarley, received a phone call from Laura Rabatsky, our Human Resource Manager, requesting that Joshua Booth's light duty time card be submitted to her. When I retrieved the time card I had noticed that the date and times were not complete or fill[ed] out. I then processed [sic] to contact Josh Booth by phone because he was not working on the 22nd and he gave me the times he worked. I wrote them in signed the bottom of the time card and submitted it to Laura Rabatsky. I did not alter any information that was given to me over the phone by Josh Booth.

{¶25} Relator argued that the text messages between him and Bertschi were personal messages, sent on his private time, and were clearly a joke. Relator supported his position with the following evidence:

(a) The June 4, 2012 letter from his counsel indicating:

> Mr. Booth informs me that he was terminated on May 24, 2012. I have reviewed the reason that you gave for terminating his employment which is that Mr. Booth allegedly was "soliciting to sell products which compete with digital dish products we provide to our customers or employees during work hours." First, the text message that Mr. Booth sent was clearly a personal message to a friend. Second, the evidence is clear that this text message was sent on his private time-we have his time cards for the period in question and it is clear that he was off work at the time that the relevant text messages were sent. I find it interesting that the employer forged a time card in an attempt to support its position on this matter. In addition, it is clear from the content of the text message that Mr. Booth was not attempting to sell any other product. Rather, he was clearly joking with a friend about Digital Dish products and not about any competitor or competitor services.

(b) A copy of relator's time card for the week of May 16, 2012, which relator completed, and provides that he worked the following hours on May 19:

> Saturday    In    4:30
> Date        Out   [crossed out] 12:25
> 5-19        In    12:55
>             Out   1:00 pm

(c) A statement from Todd Taborn indicating that he had lunch with relator on May 19 indicating:

> On Sat. 5-19 Joshua Booth went to lunch 12:25 to 12:55. No supervisors were present in the warehouse at the time and he went alone.

{¶26} Relator's motion was heard before a district hearing officer ("DHO") on August 8, 2012, at which time the motion for TTD compensation was denied. The DHO found that relator voluntarily abandoned his employment stating:

> The District Hearing Officer further finds that the Injured Worker is requesting temporary total disability compensation begin on 05/25/2012. The District Hearing Officer finds that the Injured Worker was terminated from his employment on 05/24/2012 where he was working with restrictions. Per documentation from the Employer, the Injured Worker was terminated as he was soliciting to sell products which compete with the Employer's products during working hours. The District Hearing Officer finds that the Injured Worker did receive a copy of the workplace policy which he signed on 09/06/2011 stating that he could be terminated at any time with or without reason for any lawful reason at the discretion of the Employer. The specific policy in question prohibits "soliciting during working hours and/or in working hours, selling merchandise or collecting funds of any kinds for charities or others without authorization during business hours or at a time or a place that interferes with the work of another employee on company premises." The second policy indicated is for outside employment which states "employees may not take an outside job, either for pay or as a donation for his/her personal time, with a customer or competitor of Digital Dish Inc; nor may they do work on their own if it competes in any way with the products or services we provide our customers."

The District Hearing Officer finds that the Injured Worker had sent text messages on 05/19/2012 to a former Digital Dish employee stating he would sell him cables. While the Injured Worker stated that the text messages were just a joke the Hearing Officer does not find that testimony persuasive. In addition, two timesheets were submitted, one prior to his termination which showed that during the time period in which the text messages were sent, the Injured Worker was in fact working. Injured Worker submitted a second timesheet after he was terminated which changed the times for the date of 05/19 to show that he was off when test [sic] messages were sent. The District Hearing Officer finds the first timesheet persuasive as it was turned in prior to Injured Worker's termination. The District Hearing Officer finds that pursuant [to] Louisiana-Pacific, the Injured Worker's discharge constituted a voluntary abandonment of employment.

It is therefore the order of the District Hearing Officer that the request for temporary total disability compensation from 05/25/2012 to 08/08/2012 is denied.

This order is based on the report of Dr. Fisher dated 06/15/2012, the Employee Handbook submitted by the Employer, the timesheet submitted by the Employer and the termination paperwork submitted.

{¶27} Relator appealed and, as additional evidence, submitted an affidavit from Garth Bertschi II, wherein he specifically attested:

[Two] I worked for Digital Dish in the past and worked with Joshua Booth at the company for approximately one (1) year.

[Three] During the period of time that I worked with Joshua Booth, he was good and honest employee, to the best of my knowledge.

[Four] On Saturday, May 19, 2012, I traded text messages with Joshua Booth at approximately 12:40 p.m.

[Five] Joshua Booth informed me that he was on his lunch break at the time we traded text messages.

[Six] As part of our conversation, Joshua Booth stated that we [sic] could sell me cable and get me a good deal. I knew that this was a joke because his text messages ended with "lol".

[Seven] At no time has Joshua Booth tried to sell me products from Digital Dish or offered any products or services that would compete with the products or services offered by Digital Dish. Further, I am not personally a customer or competitor of Digital Dish.

[Eight] I have known Joshua Booth for years and outside of his former employment with Digital Dish, I am not personally aware of him possessing or having access to equipment or products that he could sell or provide that would compete with Digital Dish in any way.

{¶28} A hearing was held before a staff hearing officer ("SHO") on December 20, 2012. Following the hearing, the SHO affirmed the prior DHO order and denied relator's request for TTD compensation, stating:

Temporary total disability compensation remains denied for the period 05/25/2012 through 08/08/2012, on a finding that the Injured Worker is ineligible for payment of temporary total disability compensation for the reason that he voluntarily abandoned his former position of employment under the rule of State ex rel. Louisiana-Pacific v. Industrial Commission. The Injured Worker was discharged from his employment on 05/24/2012. The Employer provided documentation of a policy, known to the Injured Worker, which specifically prohibits outside employment, with a customer or competitor of the Employer. This policy does specifically indicate that violation of the policy can result in discharge. The Employer documented text messages sent by the Injured Worker to a personal friend and former co-employee of the Employer, a Mr. Garth Bertschi. These text messages offered to sell him cables at a greatly reduced price. As these cables are used commonly in the installation of cable television systems, this is plainly an act in competition with the Employer. The Injured Worker maintains three counter arguments. First, they maintain that this was not identified as an offense which could result in discharge. In fact, it was. Second, they maintain that the text messages were merely a joke. The Staff Hearing Officer does not find this to be credible. Notwithstanding the lol entry (commonly known to mean laugh out loud), there is no reason to believe that the specifics do not involve a specific offer. Finally, the Injured Worker argues that these text messages were sent over his lunch hour. There are competing time cards, one of which would indicate that the Injured Worker sent this over

his lunch hour and the other would indicate that he did not. After review of the evidence and testimony, the weight of the evidence supports the conclusion that the time card which accurately reflects the period when the period [sic] was at lunch would show that the text messages were sent during a time when he was on the clock.

The Employer's employment policies are very brief, and do not provide specific language for discharge for a great many, or even typical circumstances, however, their non-competition policy plainly does and that is why this is the matter which has been raised with respect to the Louisiana-Pacific defense. The weight of the evidence doe support the conclusion that the Injured Worker violated this specific employment policy, and that was a factor in his discharge. In light of this, the previous finding that the Injured Worker is ineligible for temporary total disability compensation under the Louisiana-Pacific rule is affirmed.

{¶29} Relator appealed, arguing that Digital Dish's work rule does not state that this was a dischargeable offense and that there can be no voluntary abandonment if the work rule is not identified as a dischargeable offense.

{¶30} In an order mailed February 26, 2013, relator's appeal was refused.

{¶31} Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶32} In this mandamus action, relator contends that the commission abused its discretion by finding that he had voluntarily abandoned his employment when Digital Dish discharged him on grounds that the specific work rule that he allegedly violated is not identified as a dischargeable offense. Relator contends that Digital Dish's handbook acknowledgment that employment is at will is insufficient under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), despite the fact that both outside employment and solicitation are listed in the handbook as prohibitions.

{¶33} For the reasons that follow, it is this magistrate's decision that the commission did not abuse its discretion by finding that Digital Dish sustained its burden of proving that relator violated a written work rule when he discussed selling cable boxes to a former employee of Digital Dish while he was working in Digital Dish's warehouse on company time and that Digital Dish's policy was clear enough.

{¶34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶35} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI"). *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶36} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988). In *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118, 121 (1993), the court stated as follows:

> [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character.

{¶37} In *Louisiana-Pacific*, the court characterized a firing as "voluntary" when that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee. Further, it is undisputed that a claimant can voluntarily abandon their employment under *Louisiana-Pacific* even if they cannot return to their former position of employment, but are working at a modified-duty job. *State ex rel. Adkins v. Indus. Comm.,* 10th Dist. No. 07AP-975, 2008-Ohio-4260**,** and *State ex rel. Ohio State Univ. Cancer Research Hosp. v. Indus. Comm.,* 10th Dist. No. 09AP-1027, 2010-Ohio-3839.

{¶38} Originally, relator argued that the text messages were a joke and that the messages were not sent during work time, but while he was on break. Inasmuch as the commission determined that the text messages were not a joke and that they were sent while relator was on the clock, relator has backed away from those arguments. The record contains conflicting evidence on the nature of the messages and whether or not relator was on the clock. However, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981). Further, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996). As such, there is some evidence in the record to support these two factual findings.

{¶39} The issue which remains is whether or not Digital Dish's written work rule satisfied the requirements of *Louisiana-Pacific,* requiring that the written work rule or policy must (1) clearly define the prohibited conduct, (2) been previously identified as a dischargeable offense, which (3) was known or should have been known by relator.

{¶40} Relator argues that Digital Dish's sole reference to discharge contained in the "At-Will Employment" section of the handbook is insufficient to satisfy the requirements of *Louisiana-Pacific.* Relator asserts that Digital Dish's handbook fails to identify any dischargeable offenses.

{¶41} In response, both the commission and Digital Dish argue that the handbook specifically prohibits certain actions including relator's offer to sell cable to a competitor. Both argue that the SHO correctly found that the non-competition policy was plainly identified as a dischargeable offense.

{¶42} The commission first found that the prohibited conduct was clearly defined. The commission found that Digital Dish's non-competition policy was specific and clear. Specifically, the policy provides that "employees may not take an outside job * * * with a customer or competitor of Digital Dish * * * nor may they do work on their own if it competes in any way with the products or services [Digital Dish provides its] customers."

{¶43} There is some evidence in the record that Bertschi was working for a competitor of Digital Dish, a competitor which also uses cables. Further, there is some evidence in the record that relator offered to sell Bertschi cables at a reduced cost. As such, the magistrate finds that it was not an abuse of discretion for the commission to find that relator violated the work rule at issue.

{¶44} Relator disagrees with the commission's finding that this was identified as a dischargeable offense. The commission essentially found that Digital Dish informed its employees that employment was at will—terminable at the will of either party—and then specifically set forth certain actions which were expressly prohibited, including selling inventory to a competitor. In essence, the commission asserts that it was clear that one could be fired if they engaged in any expressly prohibited conduct.

{¶45} The magistrate finds that this is a reasonable finding under the circumstances. There is more than a general statement that employment is at-will. The handbook specifically prohibited certain actions.

{¶46} Further, there is nothing in this record which would indicate that Digital Dish's motives for terminating relator were an attempt to avoid the payment of compensation. To the contrary, Digital Dish had provided relator with light-duty employment since the date of his injury and, although there had been some disagreement as to what additional conditions should actually be allowed in relator's claim, there is no evidence of and there is no argument that Digital Dish had ulterior motives. This is important when considering that the Supreme Court of Ohio has emphasized the great potential for abuse in allowing simple allegations of misconduct to preclude the payment of TTD compensation. *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 76 Ohio St.3d 408 (1996).

{¶47} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it found that relator had voluntarily abandoned his employment with Digital Dish when he violated the written work rule, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).