DECISION
{¶ 1} court issue Relator, Judy M. Adkins, has filed this original action requesting that this a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 2 
("commission") to vacate its order that denied her temporary total disability ("TTD") compensation beginning August 27, 2002, based upon a finding that relator voluntarily abandoned her employment when she was terminated by respondent Spherion of Lima, Inc. ("Spherion"), effective August 26, 2002. Relator requests that the writ order the commission to enter a finding that relator did not voluntarily abandon her employment and to award TTD compensation beginning August 27, 2002.
 {¶ 2} Relator also requests that the writ order the commission to vacate the September 11, 2007 order of the staff hearing officer ("SHO") denying TTD compensation beginning October 3, 2006, on grounds that the commission had previously determined that she had voluntarily abandoned her employment and had not subsequently become temporarily and totally disabled while allegedly employed as a babysitter. Relator requests that the commission re-determine her entitlement to TTD compensation beginning October 3, 2006, absent the prior finding that she voluntarily abandoned her employment.
 {¶ 3} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 4} Relator first argues that, in the "conclusions of law" section of the decision, the magistrate erred when he found that it was clear from the "undisputed" facts that relator accepted Spherion's job offer. Relator contends that no evidence exists that she accepted the light-duty job offer because the August 12, 2002 letter from Jennifer McNutt, *Page 3 
the Spherion Branch Manager, indicates that the claimant had to sign at the bottom of the letter whether she accepted or refused the position with Spherion, and there is no copy of a signed letter in the record. Relator asserts that the magistrate's reliance upon the "undisputed" facts from the district hearing officer's ("DHO") December 11, 2002 order to support his finding that relator accepted the job offer was improper because the DHO's order was later vacated by the SHO on February 12, 2003.
 {¶ 5} Initially, we note that, in its original merit brief before the magistrate, relator did not contest that she accepted the job offer from Spherion. Notwithstanding, we reject relator's argument on its merits. Although relator contends that the magistrate could not rely upon the DHO's finding that she had accepted the job with Spherion because the DHO's order was vacated by the SHO, the DHO's findings regarding relator's acceptance of the alternative employment with Spherion were independently supported by evidence in the record. Dr. Frederick Elkins' August 15, 2002 office notes indicate that relator "feels restrictions will be o.k. as long [as] she can sit[,] stand[, or] not do either one for a long time." In his August 22, 2002 office notes, Dr. Elkins indicates that relator "is RTW [return to work] w[ith] restrictions on Mon[day] 8/26/02." Thus, there was evidence in the record independent of the findings in the DHO's order to support a conclusion that relator had accepted the employment with Spherion to begin on August 26, 2002. We also note that the SHO also clearly concluded in its order that relator accepted the job with Spherion, which relator failed to challenge. For these reasons, this objection is without merit.
 {¶ 6} Relator also argues that the record contains no evidence of the written work rule for which she was terminated for allegedly violating. Without evidence of the written work rule, relator maintains, State exrel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), *Page 4 72 Ohio St.3d 401, cannot apply. We note relator failed to raise this argument before the magistrate. Nevertheless, relator's argument fails on the merits. Although a copy of Spherion's written work rule is not included in the record before this court, the SHO's February 12, 2003 order makes clear that the SHO had evidence of the written work rule before him or her, because the SHO quoted two passages from the written work rules verbatim. We also note that relator never challenged the SHO's 2003 order in this respect, rendering the viability of her belated contention herein dubious. Therefore, this objection is without merit.
 {¶ 7} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and SADLER, JJ., concur *Page 5 
 {¶ 8} In this original action, relator, Judy M. Adkins, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the December 12, 2003 order of its staff hearing officer ("SHO") denying temporary total *Page 6 
disability ("TTD") compensation beginning August 27, 2002 based upon a finding that relator voluntarily abandoned her employment when she was terminated by respondent Spherion of Lima, Inc. ("Spherion" or "employer") effective August 26, 2002. Relator requests that the writ order the commission to enter a finding that relator did not voluntarily abandon her employment and to award TTD compensation beginning August 27, 2002.
 {¶ 9} Relator also requests that the writ order the commission to vacate the September 11, 2007 order of its SHO denying TTD compensation beginning October 3, 2006 on grounds that the commission had previously determined that she had voluntarily abandoned her employment and had not subsequently become temporarily and totally disabled while allegedly employed as a babysitter. Relator requests that the commission redetermine her entitlement to TTD compensation beginning October 3, 2006 absent the prior finding that she voluntarily abandoned her employment.
Findings of Fact: {¶ 10} 1. On September 11, 2001, relator injured her lower back while employed as a laborer for Spherion, a self-insured employer under Ohio's workers' compensation laws. Spherion initially certified the industrial claim (number 01-853036) for "sprain lumbar region."
 {¶ 11} 2. Shortly after her industrial injury, relator sought treatment from chiropractor Frederick Elkins, D.C. Dr. Elkins began issuing C-84s certifying TTD.
 {¶ 12} 3. On March 7, 2002, relator moved for additional claim allowances. Ultimately, following a May 22, 2002 hearing, an SHO additionally allowed the claim for *Page 7 
"lumbar intervertebral disc displacement L4-5; aggravation of pre-existing lumbar degenerative disc disease."
 {¶ 13} 4. On August 5, 2002, Dr. Elkins completed a "Physical Capacities" form issued by the Ohio Bureau of Workers' Compensation ("bureau"). On the form, Dr. Elkins indicated that relator can sit for six hours during an eight hour day, and can stand and walk for four hours during an eight hour day.
 {¶ 14} 5. On August 8, 2002, Dr. Eklins wrote: "[Patient] is to be provided [with] Light duty work slip to help return [patient] to work if company is willing to allow light duties restriction."
 {¶ 15} 6. On August 15, 2002, Dr. Elkins wrote: "[Patient] feels restrictions will be O.K. as long [as] she can sit [and] stand [and] not do either one for a long time."
 {¶ 16} 7. On August 22, 2002, Dr. Elkins wrote: "[Patient] is [to return to work with] restrictions 8/26/02."
 {¶ 17} 8. The record contains a copy of a letter to relator dated August 12, 2002, from Spherion Branch Manager Jennifer McNutt:
 According to our records, you have been released to work with restrictions as of August 12, 2002. Spherion is committed to returning employees back to work as soon as possible after a work related injury or illness.
 This letter will serve as an offer of work. The position is for the hours of 8 AM — 3 PM, Monday through Friday. The pay is 7.00 an hour. The start date is for 8/23/02. Please sign below if you agree to accept the position or refuse the position.
 Position Description: General [O]ffice, Report to Spherion[.] *Page 8 
 {¶ 18} 9. The record also contains another copy of the above-described letter containing the following handwritten statement: "[T]hey moved to 26th [b]ecause she had no [b]abysitter."
 {¶ 19} 10. On September 30, 2002, Dr. Elkins completed a C-84 certifying TTD from the date of injury to an estimated return-to-work date of October 31, 2002.
 {¶ 20} 11. On December 11, 2002, a district hearing officer ("DHO") heard relator's request for payment of TTD compensation. Following the hearing, the DHO issued an order terminating TTD compensation as of August 26, 2002, but reinstating compensation as of September 30, 2002. TTD compensation was terminated effective August 26, 2002, because relator failed to report to work on that day after accepting Spherion's job offer. However, TTD compensation was reinstated as of September 30, 2002 on grounds that relator was unable, as of that date, to perform the light-duty work she had accepted.
 {¶ 21} 12. The December 11, 2002 DHO's order states in part:
 [One] Based on the 08/08/2002, 08/15/2002 and 08/22/2002 office notes of Dr. Elkins, in conjunction with Dr. Elkins' 08/05/2002 physical capacities report, a preponderance of the evidence establishes that both the claimant and the physician of record were aware of the nature of the light duty job offered by the employer, and that the physician of record had released claimant to attempt this light duty job.
 [Two] The employer voluntarily modified the start date of the light duty job from 08/23/2002 to 08/26/2002 at claimant's request due to a babysitting problem.
 [Three] The claimant did not report to work as scheduled on 08/26/2002. *Page 9 
[Four] The claimant first reported to work on or about 09/03/2002, but was sent home by a receptionist because Ms. McNutt was on vacation.
 [Five] The claimant reported for work on 09/09/2002 and was informed verbally by Ms. McNutt that she had been terminated for not appearing for work on 08/26/2002. Based on these findings, it is the decision of the District Hearing Officer that the claimant did receive a written job offer of suitable employment which was made in good faith. This job was to begin on 08/26/2002. Insofar as claimant did not show up for work on 08/26/2002, the District [H]earing Officer concludes that temporary total compensation is properly terminated as of 08/26/2002.
 The foregoing findings and order are based on the testimony of Ms. McNutt, the testimony of claimant, the 09/30/2002 C-84 report of Dr. Elkins, the 08/08/2002 through 08/22/2002 treatment notes of Dr. Elkins and the written job offer letters on file.
 {¶ 22} 13. Spherion administratively appealed the DHO's order of December 11, 2002.
 {¶ 23} 14. Following a February 12, 2003 hearing, an SHO issued an order vacating the DHO's order of December 11, 2002. The SHO's order states:
 The Staff Hearing Officer finds that temporary total disability is denied from 08/27/2002 through the present, 02/12/2003, based on the case of Louisiana Pacific Corp. v Indus. Comm. 72 OS3d 401 (1995).
 There was a written policy which found that "not showing up for an assignment without calling Spherion" is one of the conditions that "will subject you to termination upon management discretion".
 The claimant was told to report to work on 08/26/2002. The claimant did not report to work until 09/03/2002. During that time period she did not call or contact the employer in any manner. She had last spoken to the employer on 08/21/2002 *Page 10 
at which time they postponed her start date until 08/26/2002 to help the claimant have more time to make childcare arrangements.
 Due to the no show — no call, the employer verbally total [sic] the claimant on 09/09/2002 that she was terminated effective 08/26/2002.
 The claimant therefore voluntarily forfeited [her] rights to further temporary total disability compensation until such time as she first takes a job with another employer.
 {¶ 24} 15. On March 12, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 12, 2003.
 {¶ 25} 16. On August 11, 2006, Dr. Elkins wrote:
 * * * Ms. Adkins under went [sic] a heart catheterization in February of this year in which complications of uncontrollably [sic] bleeding occurred. Ms. Adkins states she has a blockage and heart pain. The patient has also been depressed after losing custody of her Grandchild in April of this year. She stated these complications in her life and lack of transportation have caused her to be unable to return for treatment.
 {¶ 26} 17. On January 8, 2007, following a physical examination and a review of an MRI of the lumbar spine, orthopedic surgeon Larry T. Todd, Jr., D.O., completed a C-9 requesting authorization for lumbar surgery.
 {¶ 27} 18. On March 23, 2007, relator moved for authorization of the surgery.
 {¶ 28} 19. Ultimately, following a June 6, 2007 hearing, an SHO authorized the lumbar surgery that Dr. Todd had requested.
 {¶ 29} 20. On July 6, 2007, Dr. Elkins completed a C-84 certifying TTD from October 3, 2006 to an estimated return-to-work date of August 1, 2007. On the C-84, Dr. Elkins wrote: "The [p]atient is currently approved for lumbar surgery." *Page 11 
 {¶ 30} Parenthetically, on October 2, 2006, relator was examined by Dr. Todd who reported that he had not seen relator since October 2004. In a report dated October 2, 2006, Dr. Todd advised Dr. Elkins that he wanted to schedule relator for a discogram of her lumbar spine. Presumably, Dr. Elkins' selection of October 3, 2006 as the start date of TTD is premised upon Dr. Todd's October 2, 2006 report.
 {¶ 31} 21. On July 10, 2007, relator underwent the authorized lumbar surgery which was performed by Dr. Todd.
 {¶ 32} 22. On July 11, 2007, Chasity Alexander executed an affidavit stating:
 I, Chassity [sic] Alexander have (2) children that are currently ages 12 and 7. From approximately March 2005 to January 2006, Judy Adkins watched my children and I paid her $150.00 per week.
 By February 2006 Judy informed me that because of her extreme back pain she would be unable to continue watching my children.
 {¶ 33} 23. Following an August 8, 2007 hearing, a DHO issued an order awarding TTD compensation beginning July 10, 2007, the date of surgery. The DHO denied TTD compensation from October 3, 2006 through July 9, 2007, stating:
 * * * The District Hearing Officer finds that the Claimant has not proved by a preponderance of the evidence that this disability period is causally related to the allowed conditions in the claim. Dr. Elkins has not provided any treatment notes for this (10) month period or any narrative evidence and it is unclear what happened on 10/03/2006 to cause the Claimant's disability.
 {¶ 34} 24. Relator administratively appealed the August 8, 2007 DHO's order. *Page 12 
 {¶ 35} 25. Following a September 11, 2007 hearing, an SHO issued an order vacating the August 8, 2007 DHO's order, and denying the C-84 completed by Dr. Elkins on July 6, 2007. The SHO's order explains:
 The Staff Hearing Officer denies temporary total compensation for the requested period from 10/03/2006 through the date of today's hearing. The Staff Hearing Officer finds that pursuant to the decisions in State ex rel. Louisiana-Pacific v. Indus. Comm. (1995) 72 Ohio St. 3d 401, State ex rel. McCoy v. Dedicated Transport, Inc. (2002) 97 Ohio St. 3d 25, and State ex rel. Jennings v. Indus. Comm. 98 Ohio St. 3d 288, 2003-Ohio-737, considered in conjunction with the Staff Hearing Officer order dated 02/13/2003, the injured worker has not met the burden of demonstrating that she is entitled to a new award of temporary total compensation beginning 10/03/2006 as requested.
 The Staff Hearing Officer finds that pursuant to the 02/13/2003 Staff Hearing Officer order, the injured worker was found to have voluntarily abandoned her employment due to violation of a work rule.
 The Staff Hearing Officer finds that pursuant to her testimony at hearing and the affidavit of Ms. Alexander dated 07/11/2007, the injured worker contends that she was employed as a babysitter from approximately March of 2005 through January of 2006, receiving $150.00 per week in cash; based on the same evidence, the injured worker contends that as of February of 2006, she could no longer continue her babysitting work due to back pain.
 The Staff Hearing Officer finds that pursuant to the McCoy and Jennings decisions cited above, the injured worker, in order to demonstrate entitlement to a new award of temporary total compensation, must demonstrate that subsequent to her voluntary abandonment of employment, she returned to employment and while working at her new job became temporarily and totally disabled. The Staff Hearing Officer finds that the injured worker has not met the burden of demonstrating that she became temporarily and totally disabled while working at her new job as a babysitter. *Page 13 
 The Staff Hearing Officer finds a lack of persuasive medical evidence contemporaneous to the time that the injured worker's babysitting work ended in January of 2006 to support a finding that she left such work due to the allowed conditions of the claim. In this regard, the Staff Hearing Officer notes the 08/11/2006 narrative report from Dr. Elkins, the attending chiropractor, who indicates that at that time, the injured worker reported that the reason she had not been seen for treatment for some time was the fact that she had undergone a cardiac catheterization in February of 2006, had been suffering from symptoms of depression, and had experienced transportation problems. The 08/11/2006 report includes no specific reference to any allegation that the injured worker had been unable to continue working as a babysitter in February of 2006 due to back pain from the allowed conditions. The Staff Hearing Officer further notes the 10/02/2006 surgical consultation report of Dr. Todd, who indicates that he discussed a surgical option with the injured worker at that time, as he had done two years prior when he had first consulted on her case.
 The employer contended at hearing that the injured worker's testimony and the affidavit of Ms. Alexander are insufficient to support a finding that the injured worker had actually ever returned to work activity subsequent to the determination in 2003 that she had voluntarily abandoned her employment, a demonstration of which is required by the McCoy and Jennings decisions cited above. The Staff Hearing Officer finds it unnecessary to address this contention; even assuming that the injured worker had been employed from March of 2005 through January of 2006 as a babysitter, the Staff Hearing Officer finds that the lack of contemporaneous medical evidence in January/February 2006 persuasively demonstrating that the injured worker had become temporarily and totally disabled due to the allowed conditions while working at that time mandates against an award of temporary total compensation beginning 10/03/2006 as requested.
 {¶ 36} 26. On September 25, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 11, 2007. *Page 14 
 {¶ 37} 27. On November 23, 2007, relator, Judy M. Adkins, filed this mandamus action.
Conclusions of Law: {¶ 38} The main issue is whether the commission abused its discretion in determining that relator voluntarily abandoned her employment effective August 26, 2002 when she failed to report to work after accepting Spherion's light-duty job offer.
 {¶ 39} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 40} Recently, in State ex rel. Ellis Super Valu, Inc. v. Indus.Comm., 115 Ohio St.3d 224, 2007-Ohio-4920, the court had occasion to clarify the distinction between the employer's defense of voluntary abandonment of employment and the defense of refusal of suitable alternative employment. The court observed that the latter presumes an injury-induced inability to return to the former position of employment. "There is no need to propose alternate employment if the claimant's inability to return to the former position is attributable to anything other than the injury." Id. at ¶ 9.
 {¶ 41} In State ex rel. Pretty Products, Inc. v. Indus. Comm. (1996),77 Ohio St.3d 5, 7, the court states:
 The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." State ex rel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45, 48[.] * * * *Page 15 
 {¶ 42} Recently, in State ex rel. OmniSource Corp. v. Indus.Comm., 113 Ohio St.3d 303, 2007-Ohio-1951, the court, citing PrettyProducts, repeated the principle applicable to the doctrine of voluntary abandonment "that a claimant can abandon a former position of employment only if the claimant was physically capable of doing that job at the time of the alleged abandonment." Id. at ¶ 12.
 {¶ 43} Here, citing Pretty Products, relator claims that she cannot be found to have abandoned her employment at Spherion because she was undisputedly unable to return to her former position of employment due to the industrial injury at the time she was terminated by Spherion. The magistrate disagrees with relator's argument.
 {¶ 44} Many of the critical, but undisputed, facts are found in the DHO's order of December 11, 2002, which was vacated by the SHO's order of February 12, 2003. During a period that relator was medically unable to return to her former position of employment as a laborer, Spherion offered her a light-duty job that she discussed with Dr. Elkins. The position being offered was described by Spherion as "General [O]ffice" in Ms. McNutt's letter to relator.
 {¶ 45} Spherion voluntarily modified the start date of the light-duty job from August 23rd to 26th, 2002 at relator's request due to a babysitting problem.
 {¶ 46} Relator did not report to work as scheduled on August 26, 2002.
 {¶ 47} Relator first reported to work on September 3, 2002, but was sent home by a receptionist because Ms. McNutt was on vacation.
 {¶ 48} Relator reported for work on September 9, 2002, and was informed verbally by Ms. McNutt that she had been terminated for not appearing for work on August 26, 2002. *Page 16 
 {¶ 49} It is clear from the undisputed facts that relator accepted Spherion's job offer. Acceptance required relator to report to work on August 26, 2002.
 {¶ 50} Relator failed to report to her light-duty job on August 26, 2002. There is no evidence, nor is it claimed by relator, that she called Spherion prior to or on August 26, 2002 to explain why she would not be reporting to work on that date. In fact, the record contains no explanation from relator as to why she did not report to work on August 26, 2002.
 {¶ 51} In the SHO's order of February 12, 2003, State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, is cited for support of the holding that relator "voluntarily forfeited [her] rights to further temporary total disability compensation."
 {¶ 52} In Louisiana-Pacific, the claimant was fired by her employer for violating the employer's written work rule making it a dischargeable offense when there is an "absence [of] more than three (3) consecutive days without notification to your foreman or plant manager." Id. at 403. Holding that the claimant's termination constituted a voluntary abandonment of the former position of employment, the court explained:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
Id.
 {¶ 53} While Louisiana-Pacific involved a failure to report to the former position of employment without notification to the employer, this case involves a failure to report to *Page 17 
the recently accepted alternative employment without notification. Notwithstanding this distinction, it was not improper for the commission to cite Louisiana-Pacific, nor did the commission misanalyze the legal issue before it.
 {¶ 54} Unlike the Ellis Super Valu case, there was no issue here as to whether Spherion's job offer was made in good faith, or whether relator had legal justification for refusal. Relator accepted Spherion's job offer. Acceptance required relator to follow Spherion's work rules.
 {¶ 55} Relator's failure to report to her light-duty job on August 26, 2002 led Spherion to terminate her employment because of the rule violation. That is, relator's violation with respect to the light-duty job prevents her from ever returning to her former position of employment as a laborer with Spherion. Thus, it can be said that relator abandoned her former position of employment by violating the work rule after accepting alternative employment.
 {¶ 56} Relator's reliance on Pretty Products is misplaced. While relator was medically unable to return to her former position of employment at the time that she was terminated from that employment, she was undisputedly medically capable of reporting to the light-duty job she had accepted. Pretty Products does not directly address the situation here where the rule violation involves accepted alternative employment rather than the former position of employment. Nevertheless, it is clear that relator can be presumed to intend the consequences of her voluntary act. That is, relator can be presumed to intend that her failure to report to her newly accepted light-duty job can lead to her loss of all employment at Spherion. *Page 18 
 {¶ 57} In State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.
(2000), 90 Ohio St.3d 428, it was held that a written job offer of suitable employment must clearly identify the physical demands of the job and, moreover, that an offer lacking the requisite clarity cannot be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored. State ex rel. Ganu v. Willow BrookChristian Communities, 108 Ohio St.3d 296, 299-300, 2006-Ohio-907
(summarizing Coxson's holding).
 {¶ 58} Citing Coxson and Ganu, relator claims here that Spherion's job offer fails to meet Coxson's specificity requirement. However, relator cannot raise this issue here.
 {¶ 59} Again, the undisputed evidence in the record leads to the conclusion that relator accepted the job offer. Acceptance of the job offer precludes a challenge that the offer was insufficient.
 {¶ 60} Accordingly, based upon the above analysis, the commission did not abuse its discretion in determining that relator voluntarily abandoned her employment effective August 26, 2002, and that the job abandonment rendered relator ineligible for TTD compensation. Clearly, relator's challenge to the SHO's order of December 12, 2003 must fail.
 {¶ 61} Turning to the SHO's order of September 11, 2007, the syllabus of State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305, states:
 A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job. *Page 19 
 {¶ 62} In State ex rel. Jennings v. Indus. Comm., 98 Ohio St.3d 288,2003-Ohio-737, the court clarified its holding in McCoy. InJennings, the court reemphasized that a claimant who has abandoned his or her former job does not reestablish TTD eligibility unless the claimant secures another job or was removed from subsequent employment by the industrial injury.
 {¶ 63} Citing McCoy and Jennings, the SHO's order of September 11, 2007 under challenge here holds that relator had the burden to show that, subsequent to her voluntary abandonment she returned to employment and, while working at her new job, became temporarily and totally disabled.
 {¶ 64} The SHO found that relator failed to prove that she became temporarily and totally disabled while working at her new job as a babysitter. The SHO's reasoning for this finding was premised upon information contained in Dr. Elkins' August 11, 2006 report showing that relator had undergone a heart catheterization in February 2006 and had suffered from depression. The SHO found it significant that Dr. Elkins' report made no reference to any claim that relator's allowed lumbar conditions removed her from the babysitting job.
 {¶ 65} Clearly, the SHO's denial of TTD compensation beginning October 3, 2006 is premised upon a determination that relator was not removed from her babysitting job by the industrial injury. Significantly, relator does not challenge that determination here. Thus, relator has not shown that the commission abused its discretion in denying TTD compensation beginning October 3, 2006, as determined in the SHO's order of September 11, 2007. *Page 20 
 {¶ 66} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1