[Cite as *State ex rel. Mercy Health v. Indus. Comm.*, 2019-Ohio-1859.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mercy Health, | : | |
| Relator, | : | |
| | : | No. 18AP-64 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 14, 2019

> **On brief:** *Thomas & Company*, *L.P.A.*, *Michael A. Moskowitz*, and *J. Michael Reidenbach*, for relator. **Argued:** *Michael A. Moskowitz.*

> **On brief:** [*Dave Yost*], Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio. **Argued:** *Kevin J. Reis.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Mercy Health, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the order awarding temporary total disability ("TTD") compensation to respondent Myra Slater ("claimant") and to enter an order denying compensation.

{¶ 2} This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court deny claimant's request for a writ of mandamus. The magistrate determined the commission did not abuse its discretion when it granted claimant's application for TTD benefits for the closed period of May 25 through June 5, 2017. More particularly, the magistrate

determined that in the absence of a detailed written offer of suitable light duty work, it was impossible for the commission to determine whether relator's oral light duty job offer met the claimant's work restrictions set forth in the May 25, 2017 Medco-14.

{¶ 3} Relator has enumerated four objections as follows:

[1.] The Magistrate's Decision is inconsistent with her own Findings of Fact.

[2.] The Magistrate erred by finding that there was nothing in the record to indicate whether the verbal light duty job offer complied with the restrictions contained in the May 25, 2017 Medco-14.

[3.] The Magistrate's Decision applies the wrong legal standard regarding verbal light duty job offers.

[4.] The Magistrate erred in holding that the matter should not be remanded to the Industrial Commission for further hearings on the adequacy of the verbal light duty job offer.

{¶ 4} In relator's first objection, relator contends the magistrate accepted as fact each of the quoted averments in the affidavit of relator's Employee Health Nurse Kathy Tracy, including the assertion the written job offer she sent to claimant on June 2, 2017 describes the same light duty position with the same restrictions and limitations as the job offer Tracy orally made to claimant on May 22, 2017. Our review of finding of fact number four in the magistrate's decision reveals the magistrate found only that Tracy submitted the affidavit, and the affidavit contained the quoted averments. The magistrate did not find the oral offer of employment described the same position claimant ultimately accepted when she returned to work on June 6, 2017. Accordingly, relator's first objection is without merit and is overruled.

{¶ 5} In relator's second objection, relator contends the magistrate erred by finding there was nothing in the record to indicate whether the oral light duty job offer complied with the restrictions contained in the May 25, 2017 Medco-14. We agree with relator.

{¶ 6} As set forth in connection with relator's first objection, Tracy's affidavit, if believed, supports a finding that the oral offer of employment made to claimant on May 22, 2017 describes the same position claimant ultimately accepted when she returned to work on June 6, 2017. There is no dispute the written job offer complied with the restrictions contained in the May 25, 2017 Medco-14. Consequently, there is evidence in the record to support a finding that claimant failed to return to work on May 25, 2017, even though

relator had made an oral light duty job offer within claimant's physical capabilities. Accordingly, we sustain relator's second objection.

{¶ 7} In relator's third objection, relator contends the magistrate applied the wrong legal standard regarding oral light duty job offers. We agree.

{¶ 8} R.C. 4123.56(A) pertaining to TTD benefits states, in relevant part, that "payment shall not be made for the period when * * * an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer."

{¶ 9} Ohio Adm.Code 4121-3-32(A)(6) defines a "[j]ob offer" as follows:

> "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. *If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.*

(Emphasis added.)

{¶ 10} R.C. 4123.56(A) does not distinguish between oral job offers and written job offers. Ohio Adm.Code 4121-3-32(A)(6) permits the employer to make an oral job offer but requires an employer to submit a written job offer when the claimant refuses the oral job offer and the employer seeks to terminate TTD benefits previously granted. Both the district hearing officer and the staff hearing officer acknowledged that an employer is not required to provide a written job offer in order to challenge the claimant's initial application for TTD benefits. Yet the commission refused to consider the merit of the oral light duty job offer made to claimant on May 22, 2017.

{¶ 11} The magistrate found "relater correctly asserts that a written job offer was not necessary." (Mag.'s Decision at ¶ 49.) Nevertheless, the magistrate, relying on *State ex rel. NIFCO v. Woods*, 10th Dist. No. 02AP-1095, 2003-Ohio-6468, and *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428 (2000), concluded it was impossible

for the commission to determine whether or not the oral light duty job offer complied with the restrictions in the May 25, 2017 Medco-14. We disagree with the magistrate that *NIFCO* and *Coxson* require the conclusion that "neither the commission nor this court can review the verbal offer of employment made to claimant." (Mag.'s Decision at ¶ 58.)

{¶ 12} *NIFCO* was a case arising under Ohio Adm.Code 4121-3-32(A)(6), as the employer in that case sought to justify its termination of claimant's employment and a corresponding cessation of TTD benefits on the grounds claimant failed to return to work after the employer made the oral offer of suitable, light duty employment. Under such circumstances, we held Ohio Adm.Code 4121-3-32(A)(6) barred the employer's "attempt to use evidence of a verbal job offer to, in effect, justify its ultimate termination of employment and finding that the termination is voluntary so as to preclude the payment of TTD compensation." *Id.* at ¶ 18. We did not hold in *NIFCO* that a written job offer was required because neither the commission nor this court can review the verbal offer of employment made to claimant. Moreover, *NIFCO* is clearly distinguishable in that the claimant in *NIFCO* had been receiving TTD benefits at the time the employer terminated claimant's employment, whereas claimant's application for TTD benefits in this case had yet to be granted. Ohio Adm.Code 4121-3-32(A)(6) applies only where the employer seeks to terminate TTD benefits previously granted.

{¶ 13} Similarly, in *Coxson*, the commission refused to reinstate the claimant's TTD benefits on finding she had refused her employer's written offers of light duty employment. The *Coxson* court held the letters offering employment could not be considered offers of suitable employment because (1) the letters did not identify the position offered or describe its duties, and (2) some of the terms used by the employer in its letters were ambiguous or vague. Specifically, the court found the employer's job offer misstated the restrictions of the claimant's treating physician who had authorized the claimant's return to light duty work.

{¶ 14} The *Coxson* court rejected the employer's position that any deficiency with the letters was cured by its written promise to "work with the physician to modify jobs within given restrictions or limitations." *Id.* at 433. The court stated:

> The difficulty with accepting this argument is that it essentially legitimizes any job offer--no matter how inappropriate--under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop [total

> disability compensation], it must be clear that the job is indeed within claimant's restrictions.

*Id.*

{¶ 15} The Supreme Court of Ohio also agreed with this court that the case needed to be remanded to the commission for further consideration of the suitability of the written job offers. *Id.*

{¶ 16} Because *Coxson* did not involve an oral job offer, the *Coxson* case does not support the magistrate's conclusion that oral job offers are "impossible for the commission to review and determine whether or not the offer was for work within the injured worker's restrictions." (Mag.'s Decision at ¶ 57.) Accordingly, we agree with relator that the magistrate applied an incorrect legal standard in determining the impact of the May 22, 2017 oral light duty job offer on claimant's TTD application.

{¶ 17} The magistrate's decision provides, in relevant part, as follows:

> As can be seen from the above cases, when employers do not provide injured workers with written offers of alleged suitable employment which are specific in terms of responsibilities and restrictions, it is difficult for injured workers to make an assessment. Further, *when those offers are verbal only, it is impossible for the commission to review and determine whether or not the offer was for work within the injured worker's restrictions.*
>
> *Here, neither the commission nor this court can review the verbal offer of employment made to claimant.*

(Emphasis added.) (Mag.'s Decision at ¶ 57-58.)

{¶ 18} "It is the duty of the Industrial Commission to decide all questions of fact within its jurisdiction." *State ex rel. Coen v. Indus. Comm.*, 126 Ohio St. 550, 552 (1933). "Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding." *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981). Because it is the duty of the commission to decide all questions of fact related to claimant's TTD application, we believe the commission had an obligation to determine, in the first instance, whether or not relator made an oral offer of suitable, light duty employment to claimant on May 22, 2017. The commission acknowledged relator made an oral job offer on May 22, 2017 but made no finding whether that job offer fit within the restrictions set out in the May 25, 2017 Medco-14. As stated in connection with our ruling on relator's second objection, Tracy's affidavit, if believed, permits an

inference that it did fit within the restrictions.  By concluding it was impossible for the commission to make a factual determination whether or not the oral light duty job offer was within the injured worker's physical capabilities, the magistrate usurped the commission's factfinding authority.

{¶ 19} Relator further contends, in its third objection, the magistrate failed to consider the effect of claimant's reported acceptance of the oral light duty job offer on her TTD application.  We agree.

{¶ 20} Relator maintains "it is undisputed that [claimant] accepted the [oral] light duty job offer."  (Relator's Objs. at 12.)  Relator argues, pursuant to *State ex rel. Adkins v. Indus. Comm.*, 10th Dist. No. 07AP-975, 2008-Ohio-4260, claimant abandoned her employment when she accepted relator's May 22, 2017 oral job offer and then failed to report to work on May 25, 2017 as agreed.  Relator further contends, pursuant to *Adkins*, claimant's acceptance of the oral light duty job offer precludes her from now claiming the job offer did not meet the specificity requirements of *Coxson*.  Respondent's brief counters claimant "did not/could not accept the [oral] offer (did not report to work) because she was in pain, still treating, and/or she was not sure that the light duty job was within the limitations imposed by her treating physicians."  (Respondent's Memo. in Opp. at 2.)

{¶ 21} In *Adkins*, the injured claimant, Adkins, accepted a written offer of light duty work but did not report as agreed.  Adkins was fired for violating her employer's attendance policy, and the commission denied her subsequent request for TTD compensation on the grounds that her failure to report to work constituted voluntary abandonment of her job.  This court held that once Adkins accepted the light duty position, she was required to adhere to her employer's absenteeism policy and violating the policy was a voluntary abandonment of employment.  In rejecting Adkins' argument that the oral job offer was not suitable because it did not meet the *Coxson* specificity requirements, we adopted the following conclusion of the magistrate: "[T]he undisputed evidence in the record leads to the conclusion that relator accepted the job offer.  Acceptance of the job offer precludes a challenge that the offer was insufficient."  *Adkins* at ¶ 59.[1]

---

[1] The Supreme Court followed *Adkins* in *State ex rel. Jacobs v. Indus. Comm.*, 139 Ohio St.3d 86, 2014-Ohio-1560.

{¶ 22} In our view, relator raised a potentially meritorious argument in proceedings before the commission that claimant's failure to return to work after accepting the oral light duty job offer precluded claimant from receiving TTD benefits for the closed period of May 25 through June 5, 2017. The *Adkins* case supports that argument, but neither the commission nor the magistrate considered it. Accordingly, we sustain relator's third assignment of error.

{¶ 23} In relator's fourth objection, relator argues the magistrate erred by refusing to remand this matter to the commission for further consideration of the oral light duty job offer. We agree.

{¶ 24} As we concluded in resolving relator's third objection, there are potentially dispositive legal and factual issues that were not considered by the commission including the determination whether claimant accepted the oral offer of light duty employment made to her on May 22, 2017 and whether the oral job offer met the specificity requirements of *Coxson*. A resolution of these factual issues by the commission is necessary to determine the validity of the oral light duty job offer of May 22, 2017 and the impact the oral job offer may have on claimant's entitlement to TTD compensation for the closed period of May 25 to June 5, 2017. Accordingly, we sustain relator's fourth objection, and we shall remand this matter to the commission for further consideration of the validity and effect of the oral job offer.

{¶ 25} Following an independent review of the magistrate's decision and the objections filed by relator, we overrule relator's first objection, but we sustain relator's second, third, and fourth objections. For the reasons set forth herein, we issue a writ of mandamus ordering the commission to vacate its order awarding TTD compensation to claimant, and we remand this matter to the commission for further proceedings in accordance with this decision.

*Objections overruled in part, sustained in part*;
*writ of mandamus granted.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Mercy Health, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  18AP-64 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on November 2, 2018**

---

*Thomas & Company, L.P.A., Michael A. Moskowitz,* **and** *J. Michael Reidenbach,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Kevin J. Reis,* **for respondent.**

---

IN MANDAMUS

{¶ 26} Relator, Mercy Health, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded temporary total disability ("TTD") compensation to claimant, Myra Slater, and ordering the commission to find that she is not entitled to that compensation because relator had made a verbal offer of suitable employment.

Findings of Fact:

{¶ 27} 1.   Claimant sustained a work-related injury on May 4, 2017 and her workers' compensation claim was originally allowed for the following conditions: "lumbar strain; left wrist strain."

{¶ 28} 2.   Claimant began treating at Mercy Occupational Health and Urgent Care.

{¶ 29} 3.   On May 18, 2017, Kimberly Murray, PA-C, completed a Physician's Report of Work Ability ("Medco-14") certifying that claimant could not return to her former position of employment but could return to available and appropriate work with restrictions as of May 18, 2017.

{¶ 30} 4.   According to the affidavit of Kathy Tracy, an Employee Health Nurse for relator, she spoke with claimant regarding a light-duty position within her restrictions by telephone on May 22, 2017.   Tracy indicates that claimant informed her that she had a doctor's appointment on May 25, 2017 and that she would come into work after that.   The affidavit provides:

> [One] I am currently employed as an Employee Health Nurse by Mercy Health, ("Mercy"). I have knowledge of the facts contained within this Affidavit and am competent to testify thereto.
>
> [Two] As part of my duties as an Employee Health Nurse, I arrange light duty positions when an employee is on restrictions.
>
> [Three] On May 22, 2017, I spoke with Myra Slater by phone regarding a light duty position within her restrictions. Ms. Slater agreed to the position but asked that it not begin until Thursday May 25, 2017 due to multiple appointments she already had scheduled. I agreed to not begin the light duty position until Thursday May 25, 2017 and further agreed that she could begin on Thursday after her doctor's appointment that was scheduled for 11:00 a.m. on Thursday.
>
> [Four] On May 23, 2017, Ms. Slater called me with concerns about returning to work. I reviewed Mercy's transitional duty policy with her and reminded her that the light duty position would begin on Thursday May 25, 2017. Ms. Slater said she did not remember agreeing to Thursday because of her doctor's appointment but I reminded her that we had discussed it the day before and she was on the schedule. She stated that she had it written down at home and would check.

[Five] On May 25, 2017, Ms. Slater called and said she needed to reschedule her training. I advised her that she was on the work schedule and she stated that she had taken pain medication and could not drive. I stated that her doctor released her with restrictions and that the light duty was within the restrictions, and that if she believed she could not work, she should discuss it with her doctor.

[Six] On May 26, 2017, Ms. Slater called and left me a voice message that she could not come in due to pain. I emailed her the light duty job agreement which includes a description of the light duty position.

[Seven] On May 30, 2017, I left Ms. Slater a voice message about starting the light duty position. She returned my call and said "I don't want that job and that my lawyer would be handling it."

[Eight] On June 2, 2017, I sent the light duty agreement to Ms. Slater by registered mail.

[Nine] On June 5, 2017, Ms. Slater called me to discuss the light duty position.

[Ten] On June 6, 2017, Ms. Slater returned to work in the light duty position that was originally offered and continues in that position.

{¶ 31} 5. On May 25, 2017, claimant treated with James R. Chaillet, Jr., M.D., with Mercy Occupational Health and Urgent Care. Dr. Chaillet completed a Medco-14 wherein he placed additional restrictions on claimant's ability to work indicating that she could perform sit down work only but sit, stand, or walk as needed for comfort, and further indicating that she would require 15 minute breaks every 2 hours as needed.

{¶ 32} 6. According to Tracy's affidavit, claimant telephoned her on May 25, 2017 indicating that her doctor had given her pain medicine and she could not drive into work.

{¶ 33} 7. On May 25, 2017, Tracy provided claimant with the following written job offer:

On 05/04/2017, your physician released you to return to work in a temporary limited capacity with restrictions and restrictions were updated on 5/18/17 and 5/25/17 to state: Unable to lift with left arm. May lift up to 10 pounds with right arm. No pushing or pulling. No bending, lifting, twisting, squatting, kneeling or climbing. Sit/stand/walk as needed for comfort with 15 minute break every 2 hours. These restrictions began on 05/4/2107, were updated 5/18/17 and 5/25/17 and will be in effect until 06/08/2017 at which time

> employee health will need updated restrictions or a full duty release.
>
> **Work in quality department**
> **Assist with data entry**
> **Other duties as assigned within above restrictions**
>
> **You are to return 5/25/2017 (start date is 6/6/17).**

(Emphasis sic.)

{¶ 34} 8. Claimant accepted the written job offer and reported to work on June 6, 2017.

{¶ 35} 9. Thereafter, on June 27, 2017, claimant filed a C-86 motion requesting TTD compensation for the closed period May 25 through June 5, 2017.

{¶ 36} 10. Claimant's motion was heard before a district hearing officer ("DHO") on September 27, 2017. The DHO granted the request for the closed period of TTD compensation finding that claimant returned to work on June 6, 2017. The DHO relied on the May 18, 2017 Medco-14 from PA-C Murray, and the Medco-14 dated May 25, 2017 by Dr. Chaillet.

{¶ 37} At the hearing, the employer had argued that TTD compensation should be denied because relator had offered claimant a verbal job offer which was within her restrictions and, her failure to accept that offer and report to work precluded an award of TTD compensation. The DHO disagreed, stating:

> The District Hearing Officer notes the employer's argument that temporary total disability should be denied because the Injured Worker refused a valid light duty job offer. The Injured Worker argues that once a valid written light duty job offer was made that the Injured Worker accepted it and returned to work.
>
> The District Hearing Officer finds that Ohio Adm.Code 4121-3-32(A)(6) defines "job offer" as follows: "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the Injured Worker's residence. If the Injured Worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the Injured Worker a written job offer at least forty-eight hours prior to initiating proceedings. If the Employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

In this case, the employer made a verbal light duty job offer. However, the Injured Worker did not return to work. The employer then sent a written light duty job offer and the Injured Worker returned to work. The District Hearing Officer finds that while a written light duty job offer is not necessarily required the employer cannot request termination of temporary total disability compensation until a valid written light duty job offer has been made and refused.

{¶ 38} 11. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on November 8, 2017. The SHO vacated the prior DHO order yet still granted the closed period of TTD compensation, stating:

The Staff Hearing Officer denies the Employer's argument that temporary total disability compensation should be denied because the Injured Worker refused a valid light duty job offer. The Staff Hearing Officer finds that the Employer made a verbal light duty job offer and the Injured Worker did not return to work. The Staff Hearing Officer finds that the Employer then sent a written light duty job offer and the Injured Worker returned to work. The Staff Hearing Officer finds that the Injured Worker received the written light duty job offer and returned to work on 06/06/2017. Therefore, the Staff Hearing Officer orders that the Injured Worker's request for temporary total disability compensation for the period of 05/25/2017 through 06/05/2017 is granted.

This order is based on the MEDCO-14 Physician's Report of Work Ability from Kimberly Murray, PA-C dated 05/18/2017, and James Chaillet, M.D., dated 05/25/2017.

{¶ 39} 12. Relator's appeal was refused by order of the commission mailed December 20, 2017.

{¶ 40} 13. Relator's request for reconsideration was denied by order of the commission mailed January 11, 2018.

{¶ 41} 14. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 42} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 43} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act

requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 44} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 45} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 46} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when work within the physical capabilities of the employee is made available by the employer."

{¶ 47} Supplementing the statute, Ohio Adm.Code 4123-3-32(A) provides the following definitions:

> (3) "Suitable employment" means work which is within the employee's physical capabilities.
>
> * * *
>
> (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an

> oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

{¶ 48} Relator argues here that it provided claimant with a verbal offer of suitable employment and that her failure to report to work on May 25, 2017 constitutes grounds on which a request for TTD compensation as of that date should be denied. Relator asserts the commission required the job offer be in writing; however, inasmuch as the issue was the initial award of TTD compensation and not the termination thereof, relator argues that a written job offer was not required.

{¶ 49} The magistrate finds that relator correctly asserts that a written job offer was not necessary; however, the magistrate still finds the commission did not abuse its discretion in this instance.

{¶ 50} Claimant was injured on May 4, 2017. At that time, she began treatment, and she was unable to return to her former position of employment. As such, she met the criteria of R.C. 4123.56 and *Ramirez* for the payment of TTD compensation even though she had not yet applied for same.

{¶ 51} On May 18, 2017, PA-C Murray completed a Medco-14 indicating claimant could return to work with restrictions. As indicated in the affidavit provided by Kathy Tracy, relator was on notice that claimant had a doctor's appointment on May 25, 2017, the same day that she was to begin a modified duty assignment which was allegedly within her work restrictions. The affidavit further demonstrates that claimant had concerns about returning to work on May 25, 2017, the day of her doctor's appointment. On May 25, 2017 claimant called and indicated she had taken pain medicine and was not able to drive. She was reminded that her doctor had released her to return to work with restrictions and that if she could not, she should have a conversation with her doctor. Claimant called the next day, May 26, 2017, and indicated she could not come to work because she was in too much pain.

{¶ 52} Ultimately, Tracy sent a written offer of employment to claimant. Upon review of that written offer, the magistrate specifically notes that it includes the exact language that Dr. Chaillet provided on his May 25, 2017 Medco-14. This language had not been present on the May 18, 2017 Medco-14 provided by PA-C Murray. As such, it is clear that Dr. Chaillet put additional restrictions on claimant's ability to work as of May 25, 2017 and there is nothing in the record to indicate whether the verbal job offer relator offered would have accommodated those additional restrictions. The commission specifically relied on Dr. Chaillet's Medco-14 when it awarded claimant TTD compensation for the closed period. Although the SHO did not discuss the additional restrictions provided by Dr. Chaillet, those differences are nevertheless present.

{¶ 53} The magistrate finds two cases from this court to be instructive because they point out the difficulties inherent in verbal offers of employment. First, in *State ex rel. NIFCO v. Woods,* 10th Dist. No. 02AP-1095, 2003-Ohio-6468, Tracey Woods sustained a work-related injury and was released to return to work in a light-duty position not using her left arm. NIFCO called Woods on April 24, 2002 to inform her that a position within the restrictions of her physician was available and that she should return to work on April 25, 2002. Apparently, Woods did not return to work and NIFCO terminated her based on its attendance policy. Thereafter, arguing that Woods had voluntarily abandoned her employment when she had violated a written work rule, this court agreed with the commission's determination to award Woods TTD compensation finding that some of the dates Woods did not report to work were related to the industrial injury. NIFCO argued that the commission abused its discretion in determining that April 25 and 26 occurrence points were industrial related because of the verbal job offer. This court, through its magistrate, disagreed. Specifically:

> Relator further argues that the commission abused its discretion in finding that the missed days on April 25, 2002, April 26, 2002, and May 13, 2002, were related to the industrial injury.
>
> With respect to April 25, 2002 and April 26, 2002, Nifco points out that its May 14, 2002 termination letter memorializes that claimant was verbally informed on April 24, 2002 that Nifco had a position that met her medical restrictions and to report to work on April 25, 2002. Claimant did not report to work on April 25, 2002 or on April 26, 2002, but instead called in.

Nifco asserts here that the commission abused its discretion in determining that the April 25, 2002 and April 26, 2002 occurrence points were industrially related because Nifco verbally offered claimant alternative employment. Nifco is incorrect.

{¶ 54} Ohio Adm.Code 4121-3-32(A)(6) states:

" 'Job offer' means a proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence. If the claimant refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the claimant a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing."

Here, despite claimant's alleged refusal of Nifco's April 24, 2002 verbal job offer, Nifco never gave claimant a written offer. The magistrate recognizes that the commission's job offer rule is written in the context of an employer's motion to terminate TTD compensation. Here, the employer never moved to terminate TTD compensation. Rather, the employer endeavored to preclude the payment of TTD compensation. Nevertheless, Nifco attempts to use evidence of a verbal job offer to, in effect, justify its ultimate termination of employment and a finding that the termination is voluntary so as to preclude the payment of TTD compensation. In the magistrate's view, the written job offer rule effectively precludes Nifco from claiming that its verbal job offer bars the commission from finding that the April 25, 2002 and April 26, 2002 missed days of work were industrially related.

*Id.* at ¶ 104-09.

{¶ 55} In *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.,* 90 Ohio St.3d 428 (2002), the commission denied Marlene Coxson her request for TTD compensation on grounds that she had refused her employer's offer of light-duty employment. The *Coxson* court held that the letters offering employment could not be considered offers of suitable employment because (1) the letters did not identify the position offered or describe its duties, and (2) some of the terms used by the employer in its letters were ambiguous or vague.

{¶ 56} The *Coxson* court rejected the employer's position that any deficiencies with the letters was cured by its written promise to "work with the physician to modify jobs within given restrictions or limitations." *Id.* at 433. The *Coxson* court stated:

> The difficulty with accepting this argument is that it essentially legitimizes any job offer – no matter how inappropriate – under the guide of later modification. As noted previously, if a job offer is to be sufficient to stop TTC, it must be clear that the job is indeed within claimant's restrictions.

*Id.*

{¶ 57} As can be seen from the above cases, when employers do not provide injured workers with written offers of alleged suitable employment which are specific in terms of responsibilities and restrictions, it is difficult for injured workers to make an assessment. Further, when those offers are verbal only, it is impossible for the commission to review and determine whether or not the offer was for work within the injured worker's restrictions.

{¶ 58} Here, neither the commission nor this court can review the verbal offer of employment made to claimant. However, both the commission and this court can see that the written offer of employment specifically included the additional restrictions Dr. Chaillet provided on the May 25, 2017 Medco-14. Because those restrictions were not included on the May 18, 2017 Medco-14, even if relator's verbal job offer had been for suitable employment before claimant saw Dr. Chaillet on May 25, 2017, it may no longer have been suitable after her appointment.

{¶ 59} Relator may argue that this court should issue a writ of mandamus any way and remand the matter to the commission for further proceedings to determine whether or not the verbal offer would have complied with the claimant's restrictions. However, as both *NIFCO* and *Coxson* show, without a detailed written offer that specifies the position and the responsibilities and restrictions inherent in the position, it is impossible to determine whether or not it falls within claimant's restrictions. As such, the magistrate finds there is no valid reason to remand this to the commission. Finding that relator has not demonstrated the commission abused its discretion when it awarded claimant TTD compensation for the closed period, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).